IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,       )
                           )    No. 68274-1-I
          Respondent,      )
                           )    DIVISION ONE
     v.                    )
                           )    UNPUBLISHED OPINION
DERRON JEROME WIGGINS,     )
                           )
          Appellant        )    FILED: March 18, 2013

GROSSE, J. — It is the totality of the circumstances that determine whether a police officer's suspicion is reasonable to effectuate a legal stop. Here, the officer approached a car illegally stopped in an area known for prostitution and narcotics activity. As the officer approached, he observed the driver frantically trying to hide large amounts of money under his person, between his legs, and in the center console. Under these circumstances, it was reasonable for the officer to think that he had come across illegal activity and request the driver to stop moving his hands about. The trial court properly denied the motion to suppress. We affirm.

FACTS

Shortly after midnight on February 26, 2010, Officer Daniel Auderer was on patrol duty by himself when he noticed cars parked in a zone that prohibited stopping between 10:00 p.m. and 5 a.m., near the corner of 13th and Jefferson Streets. Officer Auderer was familiar with the area and knew it to be a high narcotics-trafficking area. He parked his patrol car, pointed his patrol car's spot light along the row of cars, and approached the vehicles with the intention of telling the occupants to move along. As he approached the first vehicle, Officer Auderer observed Derron Wiggins in the driver seat

next to a female passenger. Wiggins' "fly was open" and he had a great deal of money in his lap, which he was trying to stuff between his legs and into the center console of the vehicle. Suspecting narcotics or prostitution activity and worried that Wiggins could be reaching for a weapon, Officer Auderer told Wiggins to stop moving his hands. Wiggins did not immediately comply, but did so when Officer Auderer repeated the command to stop moving. Officer Auderer requested backup. On its arrival, he removed the female passenger to speak with her. The second responding officer took charge of Wiggins, frisking him, and having him sit on the bumper of the patrol car.

The State charged Wiggins with possession of cocaine, a violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. Wiggins filed a CrR 3.6 motion to suppress the evidence obtained during the search. The trial court concluded that the police had reasonable suspicion to detain Wiggins and denied the motion. After a bench trial on stipulated facts, the trial court found Wiggins guilty and imposed a standard range sentence. Wiggins appeals, arguing that the trial court erred by denying his motion to suppress.

ANALYSIS

Findings entered in a CrR 3.6 hearing are reviewed for substantial evidence.[1] It is an axiom that warrantless seizures are prohibited by the Fourth Amendment and article I, section 7 of the Washington Constitution unless falling within certain narrow exceptions.[2] The law is well settled that the "[p]olice may conduct an investigatory stop

---

[1] State v. Ross, 106 Wn. App 876, 880, 26 P.3d 298 (2001). Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting State v. Mendez, 137 Wn.2d 208, 214, 9070 P.2d 722 (1999)).
[2] State v. Doughty, 170 Wn.2d 57, 61, 239 P.3d 573 (2010).

2

if the officer has a reasonable and articulable suspicion that the individual is involved in criminal activity."[3] A reasonable suspicion is the "substantial possibility that criminal conduct has occurred or is about to occur."[4] Courts look to the totality of the circumstances to determine whether the stop was legal. The totality of the circumstances includes the detaining officer's experience and training, the location of the investigatory detention, and the suspect's conduct.[5] Here, Officer Auderer was cognizant that the vehicle was illegally parked in a high narcotics and prostitution area. He saw Wiggins frantically moving his hands and a great deal of money strewn about which Wiggins was trying to hide. Additionally, he noticed Wiggins' "fly was open." All of these factors would lead a reasonable person to believe that illegal activity involving either narcotics or prostitution might be occurring and warranted further investigation. In addition to the officer's concern that Wiggins' was hiding money as he approached, the officer was concerned that the hand movements indicated the possibility that Wiggins was reaching for a weapon. A large walking stick was found near the center console of the car. Officer Auderer testified that he observed the stick as he approached the vehicle, but on cross-examination said he noticed the stick when Wiggins stopped moving his hands about. Whether or not the stick was seen before or after Wiggins was detained is immaterial as there were sufficient circumstances to effectuate a legal stop. The police officer did not detain Wiggins merely because he was illegally parked or present in a high crime area.[6] Indeed, Officer Auderer testified that it was originally his

---

[3] State v. Walker, 66 Wn. App. 622, 626, 834 P.2d 41 (1992).
[4] State v. Kennedy, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).
[5] State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991).
[6] See State v. Doughty, 170 Wn.2d at 62 (presence in a high crime area in and of itself not sufficient to sustain a detention).

intention to tell the parties to move on. It was only when he observed the money and Wiggins' actions that he became suspicious of illegal activity. The vehicle was parked in a high crime area known for narcotics and prostitution activity, both a male and female were present inside that parked car and the male's "fly" zipper was open, a large amount of cash was strewn on and around the driver's lap and, as the officer approached, the driver made frantic movements shoving the cash into the console and between his legs. Viewed in their totality, the circumstances here, including the time and location of the stop, the officer's experience and observations, and Wiggins' conduct, constituted specific and articulable factors suggesting that the police officer had interrupted a possible narcotics or prostitution transaction. The trial court properly denied Wiggins' motion to suppress.

Affirmed.

WE CONCUR: